UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:15-CR-00015-GNS

UNITED STATES OF AMERICA                                                         PLAINTIFF

v.

STANLEY CHAPMAN, JR.                                                              DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 19). For the reasons discussed below, the Court **GRANTS** Defendant's motion.

### I.   SUMMARY OF FACTS AND CLAIMS

With one significant exception, the facts of this case are not in dispute. At approximately 11:55 p.m. on June 9, 2010, Deputy C. Wyatt ("Wyatt") of the Barren County Sheriff's Department was traveling north on U.S. Highway 31-E. Wyatt was following two vehicles, the lead of which was swerving back and forth as reflected in the KYIBRS Report, the standardized investigation report prepared by Wyatt the following day. (KYIBRS Report 1, 7, DN 19-1). After the second vehicle exited the road into a parking lot, Wyatt activated his blue lights in an attempt to conduct a traffic stop on the lead vehicle. (KYIBRS Report 7). The vehicle, being driven by Defendant Stanley Chapman, Jr. ("Chapman"), accelerated away from Wyatt and abruptly turned onto Pritchardsville Road, at which point Wyatt activated his emergency lights and notified the Glasgow Police Department that he was in pursuit. (KYIBRS Report 7).

Ultimately, Wyatt's vehicle struck Chapman's, causing it to spin out into a ditch. (KYIBRS Report 7).

Wyatt then approached Chapman's disabled vehicle with his weapon drawn, giving commands for Chapman to roll down his tinted window which prevented Wyatt from seeing inside. (KYIBRS Report 7). When Chapman did not roll down the window as ordered, Wyatt broke out the window and then ordered Chapman to show his hands, which Chapman did while explaining that he was armed. Chapman stuck his hands through the broken window and asked to be placed in handcuffs. (KYIBRS Report 7). Wyatt cuffed Chapman, unlocked the driver's door, and ordered the passenger in the car, Brittney Harper ("Harper"), not to move. (KYIBRS Report 7).

Wyatt then pulled Chapman from the vehicle and noticed two pistols in plain sight on Chapman. Wyatt removed the firearms from Chapman and placed him on the ground. (Hr'g Audio Recording, Mar. 8, 2016, 12:04:46, 12:05:45). No other weapons were found on Chapman's person. (Hr'g Audio Recording 12:06:00). According to the KYIBRS Report, Wyatt placed Chapman in his cruiser, at which time Deputy A. Bennett ("Bennett") arrived and removed Harper from Chapman's vehicle though there is some confusion about the identity of the first responding officers. (KYIBRS Report 7). Wyatt testified that according to the computer automated dispatch ("CAD") reports, Deputy Lowry was the first backup to arrive followed shortly thereafter by Glasgow City Police Officer Lowe just before midnight. (Hr'g Audio Recording 12:23:05). After Harper was removed from the vehicle a search revealed, *inter alia*, two additional weapons, two small bags of a substance suspected to be methamphetamine, Sudafed pills, a lithium battery, two cellphones, a gallon of Coleman fuel, and multiple

magazines of ammunition. (KYIBRS Report 7-8). Wyatt cleared the scene at 12:22 a.m. and took Chapman to jail. (Pl.'s Ex. 1, at 1, DN 28).

Chapman entered a guilty plea in Barren Circuit Court[1] on September 30, 2010, as to fourteen counts, including unlawful possession of a methamphetamine precursor, possession of handgun by a convicted felon, and possession of a firearm by a convicted felon. (J. on a Guilty Plea 4, DN 19-5). Chapman filed a stipulation of facts in Barren Circuit Court related to the criminal charges, admitting that on June 9, 2010, he "knowingly and unlawfully manufactured methamphetamine, and/or with the intent to manufacture methamphetamine . . . possessed two or more chemicals or two or more items of equipment for the manufacture of methamphetamine, and that [he] knowingly and unlawfully possessed methamphetamine . . . while having firearms in [his] possession." (Stipulation of Facts 2, DN 19-4).

On June 10, 2015, a grand jury sitting in the Western District of Kentucky indicted Chapman on three federal counts: (1) "knowingly and intentionally possess[ing] . . . pseudoephedrine, with intent to manufacture methamphetamine; (2) carrying a firearm "during and in relation to a drug trafficking crime"; and (3) being a convicted felon in possession of a firearm. (Indictment 1-2, DN 1). Chapman seeks to dismiss the indictment against him pursuant to Federal Rule of Criminal Procedure 12(b)(3)(A), arguing that the indictment is fatally flawed due to tardiness. (Def.'s Mot. to Dismiss & Mem. in Supp. of Mot. to Dismiss 1, 5, DN 19 [hereinafter Def.'s Mot. to Dismiss]). Pursuant to 18 U.S.C. § 3282, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). Chapman argues that his commission of the crimes for which he is charged

---

[1] *Commonwealth v. Chapman*, Barren Circuit Court (Ky.), Indictment No. 10-CR-00269.

ended with his arrest before midnight on June 9, 2010, so that his indictment—five years and one day later on June 10, 2015—is barred by the applicable statute of limitations. (Def.'s Mot. to Dismiss 5).

## II. DISCUSSION

Essential to Chapman's motion is a determination of when he lost possession of the drugs and firearms which are the basis of the present charges. If possession ended before midnight (*i.e.*, on June 9, 2010), Defendant's motion must be granted because the indictment on June 10, 2015, falls outside the statute of limitations. If Chapman's possession continued beyond midnight (*i.e.*, into June 10, 2010) the indictment would be timely, Defendant's motion would be denied, and the prosecution may proceed.

The parties agree, and case law is clear, that "criminal activity relating to the unlawful possession of drugs or firearms continues as long as the possession continues." (Pl.'s Resp. to Mot. to Dismiss 3, DN 21 [hereinafter Pl.'s Resp.] (citing *United States v. McGee*, 494 F.3d 551, 554 (6th Cir. 2007); *Gonzalez v. United States*, 929 F. Supp. 252, 254 (E.D. Mich. 1996)); Def.'s Mot. to Dismiss 8 (citing *McGee*, 494 F.3d at 554))). For the purpose of statutes of limitations, possession crimes are considered continuing violations, and the applicable statute of limitations does not begin to run until the defendant no longer possesses the contraband. *See Von Eichelberger v. United States*, 252 F.2d 184, 185 (9th Cir. 1958) (noting that the crime of a possession of firearms is a continuing violation); *United States v. Barnes*, 910 F.2d 1342, 1344 (6th Cir. 1990) ("In our case, we have both a completed and an ongoing crime involved, since the offense of felon in possession is complete once the felon actually obtains possession of a firearm, but continues as long as it remains in his possession."). As the Sixth Circuit has explained:

4

> [P]ossession may be either actual or constructive and it need not be exclusive but may be joint. Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others."

*United States v. Covert*, 117 F.3d 940, 948 (6th Cir. 1997) (internal quotation marks omitted) (internal citations omitted) (citation omitted).

In this case, Chapman actually possessed firearms on his person and constructively possessed additional firearms and pseudoephedrine inside of his vehicle. In order to resolve the factual question of when Chapman's possession of the contraband ended to trigger the running of the statute of limitations, the Court held a hearing on March 8, 2016, during which Wyatt was the only witness called. (Order, DN 29). Wyatt's recollection of some of the details of events were understandably cloudy given the passage of over five years since the date of Chapman's arrest. The crucial element of timing, however, is supplied by reference to the CAD report, which contains, *inter alia*, the date and time that a particular unit called dispatch, the unit's location, and the content of the transmission.[2] (Pl.'s Ex. 1). In fact, it seems that the CAD system was designed precisely for the purpose it now serves: to determine exactly when dispatch calls were made in sorting out a chronology in the aftermath of police encounters which can be highly stressful and dangerous affairs.

Here, Wyatt testified that he was sure that it was after midnight when he placed the handcuffs on Chapman. (Hr'g Audio Recording 12:51:00). When referencing the events through the times shown on the CAD report, however, Wyatt admitted that:

---

[2] The CAD report uses military time or a twenty-four hour clock, and all time entries from the CAD report will be reported as listed in that time format.

- The collision between Wyatt's cruiser and Chapman's vehicle occurred at 23:58:58;

- Wyatt broke out the window of Chapman's car and Chapman stuck his hands out, asking to be cuffed;

- Wyatt placed the handcuffs on Wyatt and took him out of the vehicle;

- Wyatt removed two guns from Chapman and pitched them to the side;

- Wyatt then placed Chapman on the ground and waited for backup;

- When Deputy Bennett arrived Chapman was restrained on the ground, "for sure" (Hr'g Audio Recording 12:07:40); and

- Officer Towe arrived after Bennett at 11:59:38 (Hr'g Audio Recording 12:08:58).

If Chapman was handcuffed while he was in the car, then disarmed and placed on the ground before Bennett arrived on the scene, and Towe arrived after Bennett at 12:59:38, it stands to reason that Chapman was handcuffed and disarmed **before midnight**. This is exactly what Wyatt conceded. (Hr'g Audio Recording 12:08:58). Once Chapman was handcuffed on the ground he no longer had actual possession of the firearms because Wyatt had already taken the guns from his pockets. Likewise, Chapman did not have constructive possession of the contraband in the car because he had no power to exercise dominion over those items while he lay face-down on the ground outside the vehicle. On this basis the Court must conclude that Chapman's possession of the guns and drugs for which he now stands indicted ended on June 9, 2010.

The facts of this case turn on a determination of literally a few seconds during an arrest which took place over five years ago. Over that time memories fade , which necessitates greater reliance in this case on the computer dispatch records over Deputy Wyatt's recollection of

something that was completely inconsequential to him at the time: whether Chapman was disarmed and cuffed before midnight or a few seconds after the date had changed. These circumstances underscore the importance of a statute of limitation which is intended to require criminal prosecutions before evidence and recollections of events become stale. *See United States v. Lovasco*, 434 U.S. 783, 789 (1977) ("[S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide the primary guarantee, against bringing overly stale criminal charges." (internal quotation marks omitted) (quoting *United States v. Marion*, 404 U.S. 307, 322 (1971))); *Marion*, 404 U.S. at 323 ("The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." (internal quotation marks omitted) (quoting *Toussie v. United States*, 397 U.S. 112, 114-15 (1970))). The Court recognizes there was an intervening state conviction and incarceration on related charges arising from the same incident as the present indictment. Nevertheless, 18 U.S.C. §1832(a) requires that an indictment must be brought within five years after the commission of a crime. Since Chapman was disarmed, handcuffed, and out of his vehicle before midnight on June 9, 2010, the present indictment issued on June 10, 2015, is barred by the statute of limitations. Accordingly, the Court will grant Chapman's motion and dismiss this case.

### III. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (DN 19) is **GRANTED**. Because Defendant was before this Court on a Writ of Habeas Corpus Ad Prosequendum, (DN 10), the United States Marshals Service **SHALL RETURN** Defendant Stanley Chapman, Jr. to the custody of the Kentucky Department of Corrections as soon as possible. This case is **DISMISSED** and **STRICKEN** from the Court's docket.

**Greg N. Stivers, Judge**
**United States District Court**
April 13, 2016

cc: counsel of record